**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>PURDUE PHARMA, L.P., *et al.*,<br><br>Debtors. | ) Case Nos. 7:21-cv-07532-CM,<br>) -07585-CM, -07961-CM,<br>) -07962-CM, -07966-CM,<br>) -07969-CM, -08034-CM,<br>) -08042-CM, -08049-CM,<br>) -08055-CM, -08139-CM,<br>) -08258-CM, -08271-CM<br>)<br>) On appeal from Bankr. Case<br>) No. 19-23649 (RDD) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE AD HOC**
**GROUP OF INDIVIDUAL VICTIMS OF PURDUE PHARMA L.P., *ET AL.*,**
**<u>SEEKING LEAVE TO INTERVENE</u>**

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier

*Co-Counsel for Ad Hoc Group of Individual*
*Victims of Purdue Pharma L.P., et al.*

The Ad Hoc Group of Individual Victims of Purdue Pharma, *et al.* (the "Ad Hoc Group"),
represents over 60,000 individuals who were injured by direct exposure to Purdue opioid products
and have filed personal injury claims against Purdue Pharma L.P. ("Purdue") and its affiliated
debtors (together with Purdue, the "Debtors") in the Debtors' pending chapter 11 cases (the
"Chapter 11 Cases").  Personal injury victims are the Debtors' single largest creditor constituency.
They have been an important voice in the Chapter 11 Cases and stand to suffer substantial financial
harm if one or more of the appellants in the above-captioned appeals (the "Appeals") succeeds in
overturning confirmation of the Debtors' confirmed plan of reorganization (the "Confirmed
Plan").  Accordingly, and consistent with the direction provided by the Court, the Ad Hoc Group
files this motion (the "Motion") seeking leave to intervene in the Appeals as an appellee.  The
Appeals concern a number of topics that directly concern individual victims and reflect the
continuation of disputes in which the Ad Hoc Group zealously participated at the bankruptcy court
level.

One such issue on appeal concerns the validity of the Confirmed Plan's non-consensual
releases of civil claims held by third parties against certain parties related to the Debtors (the
"Third-Party Releases").  In challenging the Third-Party Releases, at least one appellant has on
appeal claimed that the trust distribution procedures for the Purdue personal injury trust (the "PI
TDP") deprives claimants of their right to recover on alleged direct claims against such Debtor-
related parties.  Memorandum in Support of Emergency Motion by Appellant William K.
Harrington, United States Trustee, for a Stay Pending Appeal at 10, *In re Purdue Pharma L.P., et
al.,* Nos. 7:21-cv-07966 and 7:21-cv-7969 (S.D.N.Y.) [Dkt. No. 19] (hereafter "UST Emergency
Mot.") (representing that the PI TDP "expressly prohibit[s] any value being paid for pre-petition
direct causes of action against the Sackler family or other non-debtors for opioid-related personal

injury claims").  This representation is not correct, and as the primary drafter of the PI TDP—as well as the voice of most holders whose claims are subject to the PI TDP—the Ad Hoc Group should be permitted to respond to such misrepresentations as a full party in interest to these proceedings, just as it has done in matters concerning the PI TDP in the bankruptcy court.  *See, e.g.*, Statement of Ad Hoc Group of Individual Victims in Support of the Debtors' Motion to Approve the Adequacy of Information in the Disclosure Statement, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 2914] (attached hereto as **Exhibit A**) (addressing objections to mechanics of PI TDP and inclusiveness of the PI TDP drafting process); The Ad Hoc Group of Individual Victims' Limited Reply in Support of Confirmation of Debtors' Joint Chapter 11 Plan of Reorganization, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 3427] (attached hereto as **Exhibit B**) (responding to objections to PI TDP).

Further, insofar as any appellant argues that this Court should invalidate the Third-Party Releases on the grounds that those releases compromise the rights of individual victims, the Ad Hoc Group should be heard as to the rights and interests of its group members.  The UST, for example, purports in its appeal to assert the rights of individual victims who oppose the Third-Party Releases.  *See, e.g.,* Appellant, United States Trustee's, Statement of the Issues and Designation of Items for Record on Appeal of Confirmation Order and Order Approving Disclosure Statement, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 3842] at 2 ("The bankruptcy court's order confirming the debtors' Twelfth Amended Joint Plan of Reorganization and approving the related shareholder release strips non-debtor opioid victims [. . .] of their property—their causes of actions against other non-debtors (the various Sackler entities)—by purportedly 'releasing' their claims."); *see also* UST Emergency

Mot. at 2-3 ("The Confirmation Order irreparably harms both the public and countless individuals by extinguishing opioid victims' direct causes of action against the Sacklers and other non-debtors without compensation, consent, or adequate notice").  But none of those individuals whose rights the UST purports to assert have nominated the UST to speak on her behalf.  To the contrary, over 60,000 of those individuals have through counsel so nominated the Ad Hoc Group.  And those 60,000 individuals include not only opioid-related personal injury victims who supported the Confirmed Plan, but also individual victims who voted against the Confirmed Plan, as well as individual victims who chose not vote at all.  In fact, of the roughly 70,000 individual victims who filed proofs of claim against the Debtors—a number the UST invoked in the course of its constitutional arguments—about half or approximately 35,000 are members of the Ad Hoc Group. UST Emergency Mot. at 16. Even if this Court were to allow the UST to assert the constitutional rights of others in the course of these Appeals, it should certainly not allow the UST to displace the Ad Hoc Group in asserting the rights of the individual victims it represents.

On this topic, as the others, the Ad Hoc Group merely wishes to continue its long-standing participation.  In particular, the Ad Hoc Group advocated for victim interests throughout the settlement negotiations that begot the Confirmed Plan. *See* Order Appointing Mediators ¶ 4, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 895] (attached hereto as **Exhibit C**) (identifying the mediation parties, among whom the Ad Hoc Group is the only group speaking for opioid personal injury victims); *see also* Mediators' Report ¶ 5, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 1716] (attached hereto as **Exhibit D**) (referencing the term sheets reached in mediation among key private creditor constituencies, including personal injury claimants as represented by the Ad Hoc Group).  The Ad Hoc Group also responded to plan objections (including the objection of the UST) and spoke for

individual victims throughout the confirmation hearings, including on the topic of third-party releases and their impact on individual victims.  *See generally* Exhibit B; *see also* Confirmation Hr'g. Tr. at 113:16-118:2, *In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2021) (attached hereto as **Exhibit E**) ("Mr. Shore: I'm going to touch on the releases now and how they affect the personal injury victims . . . .").

Lastly, the intensely factual question of what harm a stay pending appeal could visit upon the various parties-in-interest to the Chapter 11 Cases has already arisen before this Court and may arise again.  This is another issue on which the largest group of actual victims should be permitted to speak, and as to which no other party can be expected to advocate on victims' behalf.  The UST, for one, cannot be expected to speak on their behalf, since by the very filing of its appeal it has decided that it knows what is best for victims better than 96% of the victims voting on this plan. *See* Final Declaration of Christine Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors*, In re: Purdue Pharma L.P., et al.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) [ECF 3372] (attached hereto as **Exhibit F**).

Finally, participating as an amicus curiae would not suffice for the Ad Hoc Group to protect its interests in the Chapter 11 Cases and in these Appeals.  The Ad Hoc Group does not seek to participate in these Appeals in order to offer its views on matters of public interest, as an amicus would do; instead, it seeks to protect its direct financial interest in seeing the Confirmed Plan consummated.  *See Muchmore's Cafe, LLC v City of N.Y.*, No. 14-CV-5668 (RRM) (RER), 2018 U.S. Dist. LEXIS 120919, at *5 (E.D.N.Y. July 15, 2018) ("The main function of an amicus is to assist courts in reaching the correct decision in a case where the general public interest is at stake."); *Russell v Bd. of Plumbing Examiners*, 74 F. Supp.2d 349, 351 (S.D.N.Y. 1999)

("Participation as *amicus curiae*, as opposed to becoming an intervenor, is appropriate when the party cares only about the legal principles of the case, and has no personal, legally protectable interest in the outcome of the litigation.") (citing Moore's Federal Practice Digest 3d § 24.23[2]). Nor would status as an amicus afford the Ad Hoc Group the same due process to which it would be entitled as an appellee. *See Russell*, 74 F. Supp.2d at 351 (noting that interveners "can act in every way like a party" where amici cannot necessarily, for example, call their own witnesses, cross-examine others' witnesses, take discovery, make independent motions or appeal).

Notwithstanding the foregoing, should the Court disagree with the Ad Hoc Group and deny the Motion, the Ad Hoc Group respectfully requests that it be permitted to be heard in the Appeals as an amicus curiae, rather than being foreclosed altogether from these important proceedings.

*               *               *

For the reasons set forth above, the Ad Hoc Group respectfully requests that this Court grant it leave to intervene in the Appeals as an appellee with respect to the issues set forth above.


Dated: October 12, 2021
New York, New York

WHITE & CASE LLP

By:
/s/  J. Christopher Shore
J. Christopher Shore
Michele J. Meises
Alice Tsier
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (305) 358-5744
cshore@whitecase.com
michele.meises@whitecase.com
alice.tsier@whitecase.com

*Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing motion complies with the Federal Rules of Bankruptcy Procedure 8013 and 8015; Federal Rule of Appellate Procedure 27; Local Rule of United States District Courts for the Southern and Eastern Districts of New York 7.1(c); and Judge McMahon's Individual Rules and Practices.  The document is in 12-point Times New Roman font and is double-spaced with margins of one inch all around.  The document does not exceed the twenty-five page limit specified in Judge McMahon's Individual Rules and Practices and contains 1579 words, excluding the cover page, signature blocks, and certificates of counsel.

By: /s/  J. Christopher Shore
J. Christopher Shore
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (305) 358-5744
cshore@whitecase.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 12, 2021, I caused to be served the foregoing *Memorandum of Law in Support of the Motion of the Ad Hoc Group of Individual Victims f Purdue Pharma L.P., et al., Seeking Leave to Intervene* via the CM/ECF Electronic Filing System.

By: /s/  J. Christopher Shore

J. Christopher Shore
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (305) 358-5744
cshore@whitecase.com